## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LUCINDA S.,[1]              )
                                    )
             **Plaintiff,**     )
                                    )     **CIVIL ACTION**
**v.**                                  )
                                    )     **No. 21-1180-JWL**
**KILOLO KIJAKAZI,[2]**       )
**Acting Commissioner of Social Security,**  )
                                    )
            **Defendant.**     )
                                      )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223, Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

## I.     Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed applications for DIB on July 21, 2014 and February 6, 2018.  (R. 261, 1119).  This is an action on Plaintiff's appeal of a decision after remand by another judge in this district of an earlier decision of the Commissioner of the Social Security Administration (SSA).  After seeking and being denied Appeals Council review of the decision below, Plaintiff filed this case seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred by failing to consider properly in accordance with Social Security Ruling (SSR) 16-3p her allegation of a need to lie down daily in a dark room because of periodic dizziness and migraine headaches.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in <u>Bowling</u>)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

3

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.    Discussion

Plaintiff argues the ALJ failed properly to apply SSR 16-3p and the holding of Brownrigg v. Berryhill, 688 F. App'x. 542, 546 (10th Cir. 2017) "by failing to give any specific reasons supported by the evidence for discounting [Plaintiff]'s allegations for the need to lie down in a dark room due to dizziness and migraines." (Pl. Br. 17). She argues that although "the ALJ included some environmental limitations in the RFC

presumably to account for possible triggers for migraines and dizziness, he provided no explanation for omitting additional breaks or absences due to" her impairments.  (Pl. Br. 17).  She argues this court, in Jamie N. v. Saul, No. 20-1164-JWL, 2021 WL 2454427, at *2 (D. Kan. June 16, 2021), cautioned against using a conclusory statement to explain an ALJ's consideration of a claimant's specific allegations.  Id.  She argues, "while the ALJ stated that '[o]verall, the record does not support her allegations regarding the frequency or intensity of her migraine headaches' the ALJ does not explain this finding, [and] never explained what frequency or intensity he did find headaches to be supported."  Id. at 18 (quoting R. 1126).  Plaintiff argues the ALJ's evaluation of her "allegations constituted no more than conclusory statements in the guise of findings."  Id. (citing Wilson, 602 F.3d at 1144).

Plaintiff argues a closer evaluation of the ALJ's consideration provides no further insight because "none of the ALJ's summary of evidence addressed the consistency of that evidence with the need to lie down in a dark room."  Id. at 19.  She argues the evidence relied upon by the ALJ "primarily normal clinical and diagnostic findings" is not inconsistent with migraines which cannot be confirmed or diagnosed with diagnostic or laboratory testing.  Id. (citing Pennington v. Chater, 113 F.3d 1246 (Table), 1997 WL 297684, at *3 (10th Cir. June 5, 1997); and Baxter v. Colvin, No. 16-1005-SAC, 2016 WL 7492468, at *4 (D. Kan. Dec. 29, 2016).

Regarding her dizziness, Plaintiff argues none of the evidence relied upon by the ALJ "indicated that [she] did not experience dizziness from her admittedly severe impairment" and "does not explain why [she] would not need to lie down in a dark room

when experiencing migraines and vertigo." (Pl. Br. 19-20). Plaintiff goes on to argue

that the ALJ's evaluation of the medical opinions did not address the need to lie down

during the day, did not address all the authors of the opinions, and "provided no

explanation for discounting the limitations for unscheduled breaks and absenteeism," but

relied on "numerous conclusory statements without explanation." Id. at 20-21. She

argues, "none of the reasons the ALJ provided explained why the record did not support

the allegation for the limitation in the need to lie down during the day." Id. 21.

Plaintiff argues the ALJ concluded her daily activities were essentially normal but

failed to point to inconsistencies between her activities and her allegations. Id. Quoting

this court's decision in Otte v. Berryhill, Plaintiff argues the ALJ "may not simply

disregard Plaintiff's allegations because there are other inconsistencies with the

evidence." Civ. A. No. 18-2006-JWL, 2018 WL 5263515 at *5 (D. Kan. Oct. 23, 2018).

She concludes, "The record contained ample support for [Plaintiff]'s allegation for the

need to lie down, further highlighting the ALJ's error."

The Commissioner argues the ALJ's decision should be affirmed because the ALJ

provided specific, valid reasons to discount Plaintiff's allegations. (Comm'r Br. 5-6).

She notes the rationale the ALJ relied upon to discount Plaintiff's allegations of

symptoms of migraines and vertigo and argues they are supported by the evidence and

are sufficient to justify discounting Plaintiff's allegations. Id. at 7. She points out,

"while Plaintiff testified she had to lie down in a dark room, she never once told any of

her medical providers that she did this for her migraines or vertigo, which significantly

contradicts her claims." (Comm'r Br. 7).  She argues Plaintiff's activities, taken as a

whole, undermine her allegations of disability.  Id.  She concludes, arguing,

> Taken together, the ALJ provided a number of good reasons for finding that
> Plaintiff, while limited, was not as limited as she claimed.  Plaintiff offers a
> different interpretation of the evidence, arguing that the ALJ made the
> wrong findings.  But the issue on appeal is merely whether the ALJ's
> factual findings had the minimal evidentiary support necessary to clear the
> extremely low bar set by the substantial-evidence standard of review.  The
> evidence cited above easily meets this standard.  Notably, the substantial-
> evidence standard is even less demanding than the "clearly erroneous"
> standard that governs appellate review of district court fact-finding—itself a
> deferential standard.  It is irrelevant under this review whether or not
> conflicting evidence could have been resolved differently.  Obviously
> reasonable minds can look to the same medical records and differ on what
> is persuasive. ...  Because the evidence supporting the ALJ's symptom
> analysis far exceeds what is necessary, the decision should be affirmed.

Id. at 8 (citations omitted).

In her Reply Brief, Plaintiff argues she "suffered from vertigo and migraine

headaches since at least 2014 as shown through her consistent reports of symptoms and

consistent treatment, including emergency room visits."  (Reply 1).  She argues that

because of these symptoms she "testified that she had to lie down in a dark room when

she experienced symptoms of migraines or vertigo, which could last a couple hours to a

full day."  Id.  She argues the ALJ summarized the record evidence but failed to explain

how that summary "supported or detracted from allegations of the need to lie down in a

dark room during migraines or vertigo."  Id.  Plaintiff argues the Commissioner's Brief

asserted the ALJ's decision "provided substantial evidence to support the conclusion that

[Plaintiff] was not as limited as she claimed" but "pointed to nothing in the ALJ's

decision showing that the ALJ explained how any of that evidence conflicted with

[Plaintiff]'s allegations for the need to lie down in a dark room when she experienced symptoms of migraines or vertigo."  (Reply 2).  She argues that to the extent the Commissioner "attempted to link the ALJ's summary of evidence to any finding of supportability related to allegations of the need to lie down, such an attempt constituted no more than post hoc rationalization further highlighting the deficiencies in the ALJ's decision."  Id. 3.  In her reply, Plaintiff cites this court's decision in Jamie N. v. Saul, Civ. A. No. 20-1164, 2021 WL 2454427 (D. Kan. June 16, 2021) in support of her argument that conclusory statements even when accompanied by a summary of the evidence are insufficient to discount a claimant's allegation of symptoms.  Id. at 3-4.

## A.    Standard for Evaluating Allegations of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[3]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for

---

[3] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 F. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on December 19, 2019, when this case was decided.  Nonetheless, to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

### B.   The ALJ's Relevant Findings

Here, the ALJ found Plaintiff must work in no more than a moderate noise level, without bright, flashing lights, having simple instructions for routine, repetitive tasks and must work in a job without production quotas, no more than occasional changes in routine, only occasional contact with coworkers and supervisors, and no contact with the public.  (R. 1123).  He noted he had applied 20 C.F.R. § 404.1529 and SSR 16-3p in evaluating Plaintiff's allegations of symptoms resulting from her impairments.  Id.  He summarized Plaintiff's allegations of disabling symptoms:

> A summary of the claimant's testimony concerning her allegations related to the nature, intensity, frequency, persistence and limiting effects of all her mental and physical symptoms is as follows:  she has migraines every day that keep her from working.  She feels a burning sensation in her brain. She has pain in her eyes, ears, nose and throat.  She feels nauseous every day.  She has vertigo and dizziness daily.  She has daily anxiety.  She is anxious about everything.  Stress triggers her anxiety.  She takes mediations to treat her pain and anxiety.  Her medications do not really help her symptoms.  She can walk 20 minutes if she is not dizzy.  She can stand at most 30 minutes if she is not dizzy.  She can sit an hour to an hour and 15 minutes before she needs to change positions.  She can lift 10 pounds. She cannot lift more weight because of her ongoing neck pain.  The cold weather makes her symptoms worse.  Her migraines are also trigged by loud noises, lights, and lack of sleep.  She has extreme insomnia.  She has burning pain in her arms all the time.  She has problems with her memory. She requires daily reminders to complete her tasks.

(R. 1124).  He found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at 1124.

The ALJ summarized the record evidence and explained his consideration of the evidence and the medical opinions.  Id. 1125-29.  The ALJ specifically discussed the evidence relating to Plaintiff's headaches and vertigo:

> The record reflects that she has been diagnosed with migraine headaches. While she is likely to have some limitations from this impairment, the record is not reflective of her having disabling limitations.  An MRI of her brain from June 2014 showed no acute intracranial abnormalities except for very small abnormal white matter intensities in the frontal lobe of unknown etiology.  These findings are not suggestive of her having significant migraine headaches, as the imaging did not reveal any lesions consistent with migraines.  Furthermore, the clinical signs and findings are not reflective of her having significant limitations from migraines. Neurological examinations have shown normal cranial nerves as well as normal cortical functioning.  She exhibited normal motor functioning and [sic] well as a normal gait.  Recently, her neurologist noted that her migraines were not intractable.  She has required ongoing medication management including MigeLief Tablet.  In the early part of the relevant period, she underwent some occipital nerve blocks to treat her headaches. However, she has not continued to undergo this treatment modality.  She has not required frequent emergency room care for treatment of her migraines.  Overall, the record does not support her allegations regarding the frequency or intensity of her migraine headaches.
>
> The claimant has also been diagnosed with vertigo.  However, the record is not reflective of her having disabling limitations from this impairment.  The claimant was seen by David Hill, M.D. on September 24, 2015, who found no evidence on clinical examination to explain her symptoms of dizziness and imbalance.  Dr. Hill referred the claimant for balance testing and vestibular exercise program.  On November 2, 2015, the claimant underwent evaluation by a physical therapist, Jerry Lampe, for assessment of her vertigo, who concluded that her symptoms and signs were consistent with vestibular disorder for which he recommended vestibular rehabilitation therapy, but noted no specific restrictions on his report. Recent testing by Bradley Thedinger, M.D. an otologic specialist, showed

11

normal findings.  He reported that her vertigo would likely improve with more control of her headaches.  He advised her to continue medications, but no other treatment was recommended.  Overall, these findings are not supportive of her report of constant debilitating dizziness.  As such, the record is not reflective of this impairment imposing disabling limitations on her functioning.

(R. 1126-27) (citations omitted).

The ALJ found Plaintiff's activities of daily living were not what one would expect of someone with disabling symptoms and limitations but were "essentially normal."  Id. 1128.  He specifically noted, "She reported pulling weeds and taking a trip to Colorado (Exhibits 51F, pp. 5, 10).  She can perform her household chores.  She can go shopping.  She can drive."  Id.

The ALJ explained the weight accorded the medical source opinions in the record.[4]  Id. 1128-29.  He accorded little weight to Dr. Davis's opinions regarding Plaintiff's mental limitations, finding them

inconsistent with the objective evidence of record, including her own psychiatric treatment records, which reflect [Plaintiff's] impairments were stable with medication compliance and resolution of [Plaintiff's] work-related stress.  In addition, her opinions are not supported by further treatment notes contained within the record.  Recent treatment record[s] document only mild anxiety that was treated with only medication management.

Id.

---

[4] The court notes the disability application in this case was first made in July 2014.  (R. 260-62).  Therefore, the ALJ applied the former procedure for relative weighing of medical opinions rather than the current procedure for evaluating the persuasiveness of each source's medical opinions or prior administrative medical findings.

The ALJ recognized Dr. Russell was Plaintiff's treating physician but accorded his opinions only limited weight for several reasons.  (R. 1128).  He found Dr. Russell's responses to the questionnaires "do not articulate an objective medical basis for the limitations and statements of disability," and his opinions are unsupported by unremarkable clinical findings or by the conservative treatment given.  Id.  He found "the manipulative limitations contained in his most recent statement have no support in the record.  She has not exhibited loss of strength or sensation in her bilateral upper or lower extremities.  The limitations provided by Dr. Russell appear to be based on the claimant's subjective complaints."  Id. (citation omitted).

The ALJ accorded considerable weight (later stated as great weight) to the opinion of the state agency medical consultant because it is consistent with the imaging and clinical signs and findings in the record, it is consistent with the fact Plaintiff "has generally only required medication management for her impairments" and "has not undergone any surgical intervention nor has she undergone frequent injections to treat her reports of chronic pain from her numerous physical impairments."  Id. at 1129.

Finally, the ALJ accorded considerable weight to the opinions of the state agency psychological consultants.  He explained this determination:

> They support their opinions with a detailed narrative explaining the evidence relied on in making the determination.  They are consistent with the mental status examinations in the record.  As detailed above, [Plaintiff's] providers did not document significant ongoing deficits in her mental health functioning.  Furthermore, they are consistent with the conservative nature of the treatment she has required to control her mental health symptoms.

Id.

## C.     Analysis

The court finds little merit in Plaintiff's specific arguments of error in the ALJ's evaluation of Plaintiff's allegations of disabling symptoms.  Nonetheless, remand is necessary because the record evidence does not support the rationale relied upon by the ALJ to find her allegations inconsistent with the evidence.  First, lying down in a dark room due to dizziness and migraines is not a symptom but Plaintiff's response to the alleged symptoms of dizziness and migraine pain.  Thus, Plaintiff's focus on this alleged need misses the issue of whether the evidence is consistent with her allegations of symptoms.  Plaintiff's testimony of lying down every day is but one evidentiary factor consistent with the alleged severity of her symptoms.  Moreover, as the Commissioner points out Plaintiff cites to no evidence from the medical record in which she told one of her medical care providers that she needed to lie down daily due to her migraines and dizziness, thereby tending to detract from the weight of that factor.

The court finds remand is necessary, however, because the ALJ found a June 2014 MRI of Plaintiff's brain showed only very small abnormal white matter intensities in the frontal lobe of her brain and the "imaging did not reveal any lesions consistent with migraines."  (R. 1126) (citing Ex. 1F, p.20, R. 449).  A review of the MRI results cited reveals Dr. Wolf provided an "impression" after reading the MRI of "Two bifrontal subcortical very small abnormal white matter foci of uncertain etiology.  These could be the consequence of migraine headaches or vasculitis."  (R. 449) (emphasis added).  While Dr. Wolf did not definitively state the white matter foci were the result of migraine headaches, the fact he said they "could be the consequence of migraine headaches"

precludes finding, as the ALJ did, that they are not "consistent with migraines."  (R. 1126).  It appears the ALJ misread Dr. Wolf's finding.  At the very least, this situation presents an ambiguity requiring resolution in the ALJ's narrative discussion of his RFC assessment.  SSR 96-8p, 1996 WL 374184, at *8 (SSA July 2, 1996).  While the court cannot find that Dr. Wolf's impression compels finding disabling symptoms, it requires remand for the Commissioner to resolve the ambiguity.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated July 18, 2022, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

15